Filed 2/2/23  Mendez v. WTMG CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| IGNACIO MENDEZ, | C095759 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CV-UOE-2021-0009144) |
| v. | |
| WTMG, INC., | |
| Defendant and Appellant. | |

In this case, we consider the enforceability of an arbitration agreement under the law of unconscionability.  As a condition of employment, JaniTek Cleaning Solutions (a trade name of WTMG, Inc.) required Ignacio Mendez to sign an arbitration agreement, a confidentiality agreement, and several other documents.  It also required Mendez to watch a training video while he signed these documents.  Mendez, who was unfamiliar with the concept of arbitration, complied.  Under the arbitration agreement, both JaniTek and Mendez were generally required to arbitrate any disputes they had against one another.  But under the confidentiality agreement, JaniTek could sue Mendez in court in

1

certain circumstances, including, for instance, if he disclosed nonpublic information about JaniTek or stole JaniTek's property.

After Mendez challenged the arbitration agreement in court under the law of unconscionability, the trial court agreed the arbitration agreement was unconscionable and unenforceable. JaniTek appeals, raising three claims. First, it contends the trial court should have issued a statement of decision explaining the factual and legal basis for its decision. Second, it asserts the trial court wrongly found the arbitration agreement unconscionable. And third, even if the agreement were unconscionable, it contends the trial court should have severed the unconscionable provisions rather than declined to enforce the agreement altogether. We are not persuaded by JaniTek's arguments and we affirm.

## BACKGROUND

### I

#### *Factual Background*

JaniTek employed Mendez as a janitor and a delivery coordinator from August 2019 to May 2021, with a starting wage of $13 an hour. On Mendez's first day of work, JaniTek provided him with a checklist listing over 120 items to be covered in his training, including facility procedures, location of equipment, and cleaning techniques. JaniTek told Mendez to sign the training checklist, along with over 15 other documents, while he watched a training video. Mendez complied.

Two of the documents Mendez signed were an arbitration agreement and a confidentiality agreement, both of which Mendez needed to sign as a condition of employment and both of which used small font—8.5 point font, according to Mendez. Under the arbitration agreement, the parties "agree[d] to arbitrate any dispute, claim, or controversy that they may have against each other" arising from the employment relationship. The only exceptions from arbitration concerned "disputes related to

2

workers' compensation, unemployment insurance, or any claim not arbitrable pursuant to federal or California law."

The arbitration agreement allowed for discovery, including requests for production of documents and inspection of property, up to three depositions per side (with more permitted with the arbitrator's permission), and up to 20 interrogatories per side. The agreement generally required the parties to cover their own attorney fees, though it allowed the arbitrator to award attorney fees to the prevailing party if permitted under applicable state or federal law. At its close, the agreement discussed severance in the event a court found any of its provisions unenforceable. It provided that the parties agreed the "unenforceable part will no longer be part of this Agreement, and the remaining provisions shall nevertheless remain in full force and effect, to the maximum extent permitted by law."

Under the confidentiality agreement, the parties agreed JaniTek could sue Mendez in court in certain circumstances. Per the agreement, Mendez needed to (1) treat as confidential all confidential, proprietary, trade secret, and nonpublic information relating to JaniTek; (2) return all JaniTek property if asked or terminated; (3) delete all confidential data about JaniTek stored on any personal device upon termination; (4) refrain from uploading, downloading, installing, or removing programs or information from JaniTek's computers unless either necessary for the job or expressly authorized; (5) refrain from soliciting any client or prospective client of JaniTek; and (6) refrain from encouraging any JaniTek employee, contractor, or representative to leave the company.

Under the confidentiality agreement's enforcement provision, "[a]ny disputes as to the interpretation, breach or threatened breach, or enforcement of the terms of this Agreement may be brought, at the option of the Company, in the Superior Court for the County of Fresno, the Superior Court for the County of Merced, or in the United States District Court, Eastern District of California." The agreement also authorized "immediate temporary and permanent injunctive relief" in the event of a breach or

3

threatened breach of its terms and, in any action to enforce its terms, entitled the prevailing party to recover "attorneys' fees, court costs, and other necessary expenses incident to the action, in addition to any other relief to which that party is entitled."

II

*Procedural Background*

In late 2021, Mendez sued WTMG, Inc., doing business as JaniTek, in San Joaquin County Superior Court. In his complaint, as later amended, Mendez alleged eight causes of action. One cause of action was under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.) and concerned various alleged violations of the Labor Code. The remaining seven causes of action were proposed class claims based on JaniTek's alleged failure to pay all wages due, to pay overtime, to reimburse employees, to provide accurate wage statements, and to provide meal and rest breaks.

JaniTek moved to compel arbitration under the arbitration agreement. It contended the trial court should enforce the arbitration agreement because its terms are fair and because Mendez freely entered into it. To support the latter point, JaniTek submitted a declaration from its former human resources coordinator. The former employee conducted Mendez's orientation when he started at JaniTek. She said she explained to Mendez "the meaning and applicability of the various policies, including the arbitration agreement," and "did not limit and prohibit [Mendez] from taking the time he wanted to review the arbitration agreement."

Mendez opposed JaniTek's motion and contended the arbitration agreement was unconscionable and unenforceable. Disputing JaniTek's characterization of the facts, Mendez submitted his own declaration with a competing take on the facts. He stated that on his first day of work JaniTek gave him a stack of documents, including the arbitration agreement, and told him to sign them. JaniTek also required him to watch a training video while he signed the documents. Mendez said he "did not understand what [he] was signing" and, "[b]ecause of the number of documents . . . and the need to watch the

4

training video, [he] was not able to read the arbitration agreement before [he] signed it." He added that he was not familiar with arbitration and no one explained the arbitration agreement or its effects on his rights. He understood he needed to sign the documents to work for JaniTek and was not told he could change the language in any of the documents.

Before the hearing on JaniTek's motion, the trial court issued a tentative ruling denying the motion. Agreeing with Mendez, the court found the arbitration agreement unconscionable, both procedurally and substantively. Starting with procedural unconscionability, it alluded to the unequal bargaining position of the parties—Mendez was a low-level employee (a janitor), JaniTek was the employer. The court also referenced other circumstances evidencing procedural unconscionability—Mendez was required to sign the arbitration agreement and several other documents as a condition of employment, he was given these documents while watching a training film, and he lacked an opportunity to read the documents, ask questions, or change the language in the documents. Turning to substantive unconscionability, the court found a lack of mutuality because JaniTek, but not Mendez, could pursue claims in court. Finding "unconscionability . . . permeates the entire contract," the court found it impossible to "remove the taint" of unconscionability and "void[ed] the entire agreement."

At the hearing following the tentative ruling, JaniTek "requested a statement of decision as neither party provided a court reporter for the hearing." The court denied the request but continued the matter to a later date to allow counsel time to schedule a court reporter. After a hearing with a court reporter present, the court affirmed its tentative opinion and issued an order denying JaniTek's motion. It offered the same reasoning in its tentative opinion, with one new ground for finding substantive unconscionability—the arbitration agreement's discovery rules were unfairly limited and could undermine Mendez's ability to present his case in arbitration.

JaniTek timely appealed. (See Code Civ. Proc., § 1294, subd. (a) [an aggrieved party may appeal from an order denying a petition to compel arbitration].)[1]

DISCUSSION

I

*Statement of Decision*

JaniTek first contends we must reverse the trial court's order because the court wrongly refused to issue a statement of decision. We reject its argument.

Section 1291 provides the relevant standard for requesting a statement of decision on a petition to compel arbitration. It requires a trial court to issue a statement of decision if a party requests one "pursuant to Section 632." (§ 1291.) Section 632, in turn, requires a trial court to "issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the [timely] request of any party appearing at the trial." It adds that "[t]he request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision." (§ 632; see also Cal. Rules of Court, rule 3.1590(d) ["The principal controverted issues must be specified in the request" for a statement of decision].)

In this case, the record shows JaniTek made an oral request for a statement of decision following the trial court's tentative decision. But JaniTek never appears to have "specif[ied] those controverted issues as to which [it] [wa]s requesting a statement of decision," as required under section 632. It instead, according to the trial court's minute order, simply "requested a statement of decision as neither party provided a court reporter for the hearing." The court denied the request but continued the matter to allow the parties time to schedule a court reporter. The parties afterward arranged a court reporter

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

6

for the subsequent hearing on the motion, and JaniTek never again requested a statement of decision.

Under these circumstances, we find JaniTek forfeited its right to a statement of decision on all material, controverted issues. As section 632 makes explicit, "[t]he request for a statement of decision *shall* specify those controverted issues as to which the party is requesting a statement of decision." (§ 632, italics added.) And as other courts have explained, "a general, nonspecific request for a statement of decision does not operate to compel a statement of decision as to all material, controverted issues." (*City of Coachella v. Riverside County Airport Land Use Com.* (1989) 210 Cal.App.3d 1277, 1292-1293; see also *Conservatorship of Hume* (2006) 140 Cal.App.4th 1385, 1394.) Because JaniTek never identified any controverted issue to be addressed in a statement of decision, it cannot now fault the trial court for failing to issue a statement of decision on all material, controverted issues. (See *City of Coachella*, at p. 1292; *Atari, Inc. v. State Bd. of Equalization* (1985) 170 Cal.App.3d 665, 674-675 ["section 632 requires a party requesting a statement of decision to specify those controverted issues as to which it is requesting a finding"; "[f]ailure to request findings on specific issues results in a waiver as to those issues"].)

II

*Unconscionability*

JaniTek next challenges the trial court's finding that the arbitration agreement was both procedurally and substantively unconscionable. It contends the agreement was neither procedurally unconscionable nor substantively unconscionable; and even if it were, the trial court should have severed the unconscionable provisions rather than declined to enforce the agreement altogether. We reject its arguments.

A.      *Background Principles*

Arbitration agreements are "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (§ 1281.) One ground for

7

invalidating a contract is unconscionability, which is codified in Civil Code section 1670.5. (See *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).) That statute states: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).)

"The general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party. [Citation.] Under this standard, the unconscionability doctrine ' "has both a procedural and a substantive element." ' " (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).) " 'Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' " (*Ibid.*) Procedural unconscionability, in turn, pertains to the circumstances of contract negotiation and formation, focusing on "oppression"—which occurs when the contract involves a lack of negotiation and meaningful choice—and "surprise"—which occurs when the allegedly unconscionable provision is hidden in the contract. (*Ibid.*; see *id.* at p. 126 [" ' " '*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form' " ' "].)

Both procedural unconscionability and substantive unconscionability must be present for a court to exercise its discretion to refuse to enforce a contract or clause under the unconscionability doctrine. (*Armendariz, supra*, 24 Cal.4th at p. 114.) "But they need not be present in the same degree" and are evaluated on " 'a sliding scale.' " (*Ibid.*) Under this sliding scale, " '[t]he more substantively oppressive the contract term, the less

8

evidence of procedural unconscionability is required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required." (*OTO, supra*, 8 Cal.5th at pp. 125-126.) Ultimately, "[t]he overarching unconscionability question is whether an agreement is imposed in such an unfair fashion and so unfairly one-sided that it should not be enforced." (*Id.* at p. 124.)

In reviewing a trial court's application of the unconscionability doctrine, our standard of review varies depending on the context. We review de novo a trial court's application of the law to undisputed facts. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.) We also generally review de novo a trial court's interpretation of a contract, as the meaning of a contract is a question of law. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 866.) But in the event the parties have offered conflicting extrinsic evidence to aid in the contract's interpretation, we review the trial court's resolution of that conflict for substantial evidence. (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 746-747.) And to the extent the parties have offered conflicting evidence concerning the circumstances of the contract's formation, we will review the trial court's resolution of that conflict too for substantial evidence. (*Dougherty v. Roseville Heritage Partners* (2020) 47 Cal.App.5th 93, 102.) Because, as covered above, JaniTek never properly requested a statement of decision, we "must infer any finding to uphold the [trial court's order] that has substantial evidence in support in the . . . record." (*Smith v. City of Napa* (2004) 120 Cal.App.4th 194, 198-199.)

B.      *Procedural and Substantive Unconscionability*

These principles in mind, we turn first to the question of procedural unconscionability, which again, focuses on oppression and surprise.

Starting with oppression, JaniTek's arbitration agreement was adhesive in nature. Fitting the classic definition of an adhesion contract, it was written on a preprinted form and offered by the party with superior bargaining power on a take-it-or-leave-it basis.

9

(*OTO, supra*, 8 Cal.5th at p. 126 [describing adhesion contracts and noting "[a]rbitration contracts imposed as a condition of employment are typically adhesive"].)  That alone evidences " 'a degree of procedural unconscionability.' " (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244.)  As our Supreme Court has observed in discussing mandatory arbitration agreements in the employment context, " 'the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.' " (*OTO,* at p. 127.)

Other considerations further evidence oppression.  Mendez was a low-level employee earning near the minimum wage and unfamiliar with arbitration.  (See *OTO, supra*, 8 Cal.5th at pp. 126-127 [the party's education and experience is relevant in determining oppression]; see also State of California Dept. of Industrial Relations, Industrial Welfare Commission, Minimum Wage Order MW-2019 <https://www.dir.ca.gov/iwc/WageOrders2019/MW-2019.pdf> [as of Feb. 2, 2023], archived at <https://perma.cc/EL8S-PVZ5> [requiring a minimum wage between $11 and $12 in 2019, depending on the employer's size].)  JaniTek presented the arbitration agreement to Mendez on his first day of work, along with other employment-related documents.  (See *OTO*, at p. 127 [finding these details evidence oppression].)  According to Mendez, JaniTek neither explained the arbitration agreement's contents nor its significance.  (See *ibid.* [finding these details evidence oppression].)  Nor did it appear to give Mendez any opportunity to review the agreement with counsel.  It instead told him to sign the agreement at the workplace on his first day at work.  (See *id.* at pp. 126-127 [the party's ability to review the proposed contract with an attorney is relevant in determining oppression].)  And it told him to sign the agreement at the same time he was watching a training video, preventing him from giving the agreement his undivided attention.  These details together favor a finding of substantial oppression.

10

The evidence also supports a finding of surprise.  The arbitration agreement was written in a very small font—8.5 font, in Mendez's telling.  (See *OTO, supra*, 8 Cal.5th at p. 128 [agreement's small font supported a finding of surprise].)  It was also one of two distinct documents dealing with employment disputes that included conflicting language, potentially leading to confusion and surprise.  One of these agreements (the confidentiality agreement) allowed suits in court on several topics, including, for instance, to protect trade secrets; the other (the arbitration agreement) generally prohibited suits in court on all topics, including, specifically, to protect trade secrets.  These conflicting agreements about the appropriate forum for resolving disputes enhanced the prospects of confusion about the arbitration agreement's significance, particularly for a layperson like Mendez.

Considering this evidence of oppression and surprise together, we find the arbitration agreement had a substantial degree of procedural unconscionability.  We also find that true even though JaniTek makes several points—some valid, some not—on the topic of surprise.  It first contends Mendez cannot establish surprise because he admitted he never read the arbitration agreement.  While we might have found this detail meaningful had Mendez simply chosen not to read the agreement, Mendez's allegations are otherwise.  He alleged he never read the agreement because JaniTek never afforded him a sufficient opportunity to read it, not because of choice.  And to the extent Mendez is believed on this point (and the trial court did believe him), that only tends to strengthen the finding of procedural unconscionability.  (See *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 69 [finding a degree of surprise when a party was given "little time to review" the arbitration agreement].)

JaniTek also, on the topic of surprise, notes the arbitration agreement included a clear title about its subject matter, was written in plain English, and included capitalization, boldface type, and underlining to emphasize the need to arbitrate.  That is largely true, and we agree those facts are important and tend to diminish a finding of

11

surprise. But as noted, the agreement's font was unusually small and its text was inconsistent with the confidentiality agreement. Two documents might be written in plain English, yet still be difficult to read because of small font and difficult to understand because of inconsistencies. In the end, although we acknowledge not all facts point to procedural unconscionability, we still find a substantial degree of procedural unconscionability.

We turn next to the question of substantive unconscionability, which, again, requires an evaluation of the fairness of the agreement's terms. Because we find a substantial degree of procedural unconscionability, we must "closely scrutinize the substantive terms 'to ensure they are not manifestly unfair or one-sided.' " (*OTO, supra*, 8 Cal.5th at p. 130.) "This analysis 'ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " [citation], " 'unduly oppressive' " [citation], " 'so one-sided as to "shock the conscience" ' " [citation], or "unfairly one-sided" [citation].' " (*Id.* at pp. 129-130.)

Applying the requisite "close[] scrutin[y]" here, we find the arbitration agreement and confidentiality agreement, considered together, are unfairly one-sided. Under the arbitration agreement, again, the parties needed "to arbitrate any dispute, claim, or controversy that they may have against each other" arising from the employment relationship. But under the confidentiality agreement, JaniTek could sue Mendez in court if he revealed any nonpublic information about JaniTek, failed to return JaniTek's property upon request or termination, failed to delete confidential data about JaniTek from his personal devices upon termination, misused JaniTek's computers, solicited any client or prospective client of JaniTek, or encouraged any employee, contractor, or representative to leave JaniTek. The confidentiality agreement also, among other things, allowed the prevailing party in any action to enforce its terms to recover attorney fees.

Because of the confidentiality agreement's terms, the parties faced different obligations to arbitrate and different rights to attorney fees. Under the confidentiality

12

agreement, for instance, JaniTek could sue Mendez in court if he stole any of its property. It could also obtain attorney fees if it succeeded on its claim. But should Mendez seek to pursue the same type of claim against JaniTek, he would be limited to arbitration. And if he prevailed on his claim, he would have no right to attorney fees. That is because, per the arbitration agreement, the arbitrator could award attorney fees only if allowed under applicable law; and per applicable law, a party cannot recover attorney fees in an action for the recovery of personal property. (*Le Fave v. Dimond* (1956) 46 Cal.2d 868, 870.) Under the confidentiality agreement, moreover, JaniTek could sue Mendez in court if, among other things, he revealed any nonpublic information about JaniTek. And again, it would be entitled to attorney fees if it prevailed. But should Mendez seek to pursue the same type of claim against JaniTek, he would again be limited to arbitration. And should he succeed on his claim, he would not necessarily be entitled to any attorney fees. (See Civ. Code, §§ 56.20, subd. (c) [an employer generally cannot use or disclose medical information about its employees], 56.35 ["a patient whose medical information has been used or disclosed in violation of Section . . . 56.20 " may recover up to $1,000 in attorney fees, but only if the patient "has sustained economic or personal injury"].)

We find this lack of mutuality reveals a substantial degree of substantive unconscionability. In creating the various exceptions to arbitration, JaniTek evidenced its belief that the courts are the superior forum for resolving certain types of disputes. But to the extent it held that belief, it should have acted even-handedly in affording access to the courts—not simply reserved for itself the right to pursue claims in court. As our Supreme Court has explained, "an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." (*Armendariz, supra*, 24 Cal.4th at p. 120.) That description fits the agreement here. (See *Davis v. Kozak* (2020) 53 Cal.App.5th 897, 917 [finding

substantively unconscionable an arbitration exception that only benefited the employer]; *Swain v. LaserAway Medical Group, Inc., supra*, 57 Cal.App.5th at pp. 72-73 [same].)

JaniTek raises three arguments to avoid a finding of substantive unconscionability, but we find none persuasive. It first suggests all claims—both its claims and Mendez's claims—are subject to arbitration under the terms of the arbitration agreement. After all, it notes, the arbitration agreement and the confidentiality agreement must be read together and, per the arbitration agreement, all disputes between the parties must be arbitrated, including disputes involving trade secrets. (Civ. Code, § 1642 ["Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together"].)

Although true the arbitration agreement generally requires all disputes between the parties to be arbitrated, the confidentiality agreement specifically allows JaniTek to pursue various claims in court. And because a specific term prevails over a general one in the event of an inconsistency, we find the confidentiality agreement's specific terms allowing suit in court prevail over the arbitration agreement's general terms requiring arbitration. (§ 1859 ["in the construction of the instrument the intention of the parties, is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former"].) We also find this construction consistent with the principle that a contract should be construed "so as to give effect to every part, if reasonably practicable." (Civ. Code, § 1641.) Under our reading, the arbitration agreement and confidentiality agreement can largely be harmonized, with the confidentiality agreement serving to carve out certain claims from the scope of the arbitration agreement. But under JaniTek's reading, the arbitration agreement simply overrides the confidentiality agreement's terms allowing suit in court, rendering those terms meaningless. Consistent with general principles of contract interpretation, we find it better to harmonize the two agreements to the extent possible rather than simply ignore the confidentiality agreement's explicit terms.

14

Next, taking a different approach, JaniTek contends the carve-outs in the confidentiality agreement are valid because they serve a legitimate business interest—namely, they "serve the legitimate commercial need of protecting trade secrets." In making this argument, JaniTek invokes the principle that "if an employer does have reasonable justification for the arrangement—i.e., a justification grounded in something other than the employer's desire to maximize its advantage based on the perceived superiority of the judicial forum—such an agreement would not be unconscionable." (*Armendariz, supra*, 24 Cal.4th at p. 120.)

But because JaniTek raised this argument only in its reply brief and in a footnote in its opening brief, we find the argument forfeited. (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 419-420 [courts need not address arguments made in footnotes]; *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [finding forfeited an argument raised for the first time in a reply brief without good cause].) Even had JaniTek properly raised the issue, moreover, we would still reject the argument. Although JaniTek claims the confidentiality agreement's provisions "serve the legitimate commercial need of protecting trade secrets," it never acknowledges that these provisions cover far more than simply claims to protect trade secrets. Nor does it explain how it has a legitimate business interest in granting itself, but not Mendez, the right to pursue various claims in court.

Lastly, JaniTek contends the confidentiality agreement could be construed to do nothing more than confirm the parties' existing statutory right to seek injunctive relief in court. It reasons that both parties already have the right to seek injunctive relief in court under section 1281.8 and, if the confidentiality agreement were construed to allow only injunctive relief, then the agreement would simply confirm the parties' existing statutory right. JaniTek bases its argument on the principle that "an arbitration agreement is not substantively unconscionable simply because it confirms the parties' ability to invoke

15

undisputed statutory rights." (*Baltazar v. Forever 21, Inc., supra*, 62 Cal.4th at pp. 1247-1248.)

We are unpersuaded. To start, although JaniTek claims both parties can seek injunctive relief under section 1281.8, we question the applicability of that statute. Section 1281.8 is part of the California Arbitration Act (§ 1280 et seq.). It permits parties to arbitration to seek certain provisional remedies in court, including preliminary injunctions, if "the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." (§ 1281.8, subds. (a)-(b).) But according to the arbitration agreement here, California law applies only if the Federal Arbitration Act (9 U.S.C. § 1 et seq.) "is not applicable." And according to JaniTek, the Federal Arbitration Act *is* applicable. Under JaniTek's own argument, then, section 1281.8 (and the rest of the California Arbitration Act) is not applicable in this case.

But even assuming section 1281.8 were applicable, JaniTek's argument would still fall short. Although JaniTek contends the confidentiality agreement could be construed to allow only injunctive relief, we find differently. The agreement states: "Any disputes as to the interpretation, breach or threatened breach, or enforcement of the terms of this Agreement may be brought, at the option of the Company, in the Superior Court for the County of Fresno, the Superior Court for the County of Merced, or in the United States District Court, Eastern District of California." It adds: "The prevailing party in any action to enforce or interpret the terms of this Agreement, including any requests for injunctive relief . . . , shall be entitled to recover from the other party reasonable attorneys' fees, court costs, and other necessary expenses incident to the action, in addition to any other relief to which that party is entitled." Per the agreement's plain terms, then, the agreement authorizes JaniTek to obtain injunctive relief, attorney fees and costs, and "any other relief to which [it] is entitled"—not simply injunctive relief.

"Ultimately, the question is whether [Mendez], through oppression and surprise, was coerced or misled into making an unfair bargain." (*OTO, supra*, 8 Cal.5th at p. 136.)

16

We find he was. Mendez was required to sign the confidentiality agreement and the arbitration agreement as a condition of employment on his first day of work. Together, these agreements allow JaniTek to pursue a variety of claims against Mendez in court, yet they allow Mendez to pursue these same types of claims through arbitration only. The agreements also allow the award of attorney fees in suits JaniTek pursues in court, yet in arbitration matters, they only permit attorney fee awards if allowed under applicable law—which generally translates to no award of attorney fees. (See *Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1258 [under California law, "parties generally must pay their own attorney fees"].) Considering the coercive setting in which this bargain was entered, we conclude it was sufficiently one-sided as to render the arbitration agreement unenforceable.[2]

C. *Severability*

Having found the arbitration agreement unconscionable, we consider next the propriety of severing the unconscionable language and enforcing the remainder of the contract. (See Civ. Code, § 1670.5, subd. (a).) In performing this inquiry, "[c]ourts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Armendariz, supra*, 24 Cal.4th at p. 124.)

---

[2] Mendez contends other facts further support a finding of unconscionability, including the combined length of the arbitration agreement and confidentiality agreement (nine pages), the alleged use of "legalese" (though he offers no examples), and the alleged limited opportunity for discovery in the arbitration agreement. But because we find the arbitration agreement unconscionable for the reasons covered, we need not address whether these additional facts further evidence unconscionability.

17

In this case, we find severance inappropriate. As covered above, our finding of unconscionability focused on the arbitration agreement and the confidentiality agreement considered together, with the former serving to require arbitration in general and the latter serving to exempt many of JaniTek's potential claims (though none of Mendez's claims) from arbitration. In creating this one-sided exemption from arbitration in its own favor, JaniTek evidenced an effort to reserve for itself a perceived superior forum (the courts) for vindicating many of its claims and to relegate Mendez to a perceived inferior forum (arbitration) for vindicating his claims. Considering this unlawful intent behind the agreements, we find the trial court did not abuse its discretion in concluding that the arbitration agreement, as modified by the confidentiality agreement, was permeated by an unlawful purpose. (See *Armendariz, supra*, 24 Cal.4th at p. 124 [finding the same when "multiple defects indicate[d] a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage"].)

In seeking a contrary finding, JaniTek attempts to focus our attention on the arbitration agreement alone. Without mentioning the confidentiality agreement, it asserts "the Arbitration Agreement's central purpose is to allow the parties access to streamlined arbitration procedures for all disputes *either of them* may lawfully submit to arbitration." But again, we cannot consider the arbitration agreement in isolation. We instead must consider it together with the confidentiality agreement. (Civ. Code, § 1642 ["Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together"].) And considering these documents together, we find the motivating force behind these agreements was not the benign purpose JaniTek describes. It was instead the improper purpose to require Mendez, but not JaniTek, to pursue all his potential claims in a perceived inferior forum.

JaniTek next proposes a potential means of saving the arbitration agreement. It argues the trial court "should have stricken the first sentence of section 2 of the

18

Confidentiality Agreement" rather than decline to enforce the arbitration agreement altogether. The referenced sentence states: "Any disputes as to the interpretation, breach or threatened breach, or enforcement of the terms of this Agreement may be brought, at the option of the Company, in the Superior Court for the County of Fresno, the Superior Court for the County of Merced, or in the United States District Court, Eastern District of California." JaniTek suggests that were this sentence struck, then it (like Mendez) would be limited to pursuing its claims in arbitration—resolving any claim of unfair one-sidedness.

But the referenced sentence is not the only one contemplating JaniTek's ability to sue Mendez in court. The confidentiality agreement elsewhere discusses JaniTek's ability (though not Mendez's ability) to choose "one or more remedies" to enforce the agreement's terms and indicates JaniTek could pursue any remedy "existing at law or in equity or by statute or otherwise." The agreement also allows the prevailing party in any action to enforce the agreement's terms to recover "court costs." Considering this language, even if we were to strike the sentence explicitly authorizing JaniTek to sue Mendez in court, we would still find the rest of the confidentiality agreement implicitly contemplates the very same—JaniTek could sue Mendez in court. Striking the referenced sentence, then, would not be enough to remove the unfair one-sidedness of the confidentiality agreement.

Even if we ignored this other language, moreover, JaniTek's argument would still fall short for a more fundamental reason. To put the parties on equal footing, JaniTek suggests we should sever the language in the confidentiality agreement allowing it to pursue its claims in court. But doing so would undermine the combined central function of the confidentiality agreement and the arbitration agreement—which, again, was to require Mendez (but not JaniTek) to pursue all his potential claims in the perceived inferior forum of arbitration. JaniTek may be willing, now that the employment relationship has ended, to kill the confidentiality agreement in order to save the

arbitration agreement. But even so, we cannot modify an agreement to defeat its central purpose. (See *Armendariz, supra*, 24 Cal.4th at p. 124 ["If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced"].)

## DISPOSITION

The order is affirmed. Mendez is entitled to recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

/s/
BOULWARE EURIE, J.

We concur:

/s/
MAURO, Acting P. J.

/s/
KRAUSE, J.